UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MITCHELL NOTTINGHAM,

        Plaintiff,                      Case No. 2:25-cv-38

v.                                         Honorable Ray Kent

UNKNOWN KOVAL et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Nauchtman, Schroeder, James, and Bolton. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendant Koval. Plaintiff's Eighth Amendment claim against Defendant Koval in her individual capacity remains in the case.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP staff in their official and personal capacities: Warden Sarah Schroeder, Assistant Deputy Warden Unknown

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

James, Grievance Coordinator Unknown Bolton, and Corrections Officers Unknown Koval and Unknown Nauchtman.

Plaintiff alleges that on August 15, 2024, he was on suicide watch in MBP's Q Block after attempting to hang himself. (Compl., ECF No. 1, PageID.3.) Plaintiff was subject to observation every 15 minutes, as well as a "detail by psych." (*Id.*) Plaintiff avers that while on suicide watch, he was not supposed to have access to anything other than his suicide prevention gown and blanket, and he was supposed to be held in a suicide prevention cell. (*Id.*) Plaintiff claims, however, that Defendant Nauchtman placed him in a quarantine cell "next to an inmate who had non-suicide prevention property in his cell." (*Id.*) Plaintiff references that the other inmate had sheets, clothing, blankets, and books. (*Id.*)

Around 12:35 p.m. that day, Defendant Koval was conducting the 15-minute observation round. (*Id.*) When she got to Plaintiff's cell, Plaintiff told her that he was going to hang himself. (*Id.*) Defendant Koval responded, "Go ahead I'm not going to save you." (*Id.*) Defendant Koval then "shut the door closing off the housing section." (*Id.*) Plaintiff alleges that the door is not supposed to be closed if an inmate is on suicide watch. (*Id.*)

Plaintiff then took a sheet that he had gotten from the inmate in the cell next to him and tied one end to the cell bars. (*Id.*) Plaintiff "waved his arms back [and] forth in front of the camera, yanked on the sheet several times[, and] pointed to it [and] screamed as loud as [he] could, 'I'm going to kill myself!'" (*Id.*) Plaintiff placed the sheet around his neck, tied a slip knot, and then dropped his weight to cut off circulation until he became unconscious. (*Id.*) Plaintiff repeated this at least twice more after regaining consciousness each time. (*Id.*, PageID.3–4.) When Plaintiff came to around 1:20 p.m., he was "surrounded by health care workers, corrections officers[, and] several other MDOC staff." (*Id.*, PageID.4.)

4

Plaintiff goes on to assert that he filed a grievance about the issue. (*Id.*) Plaintiff spoke to Defendants Schroeder and James about the fact that his grievances were not being filed, and they told Plaintiff they would look into it. (*Id.*, PageID.4–5.) Plaintiff sent multiple kites to Defendants Schroeder, James, and Bolton about his grievances not being filed, but his kites were not answered. (*Id.*) Plaintiff avers that his Step II grievances were either thrown away, misplaced, or held by staff until the time limit for filing them had been exceeded. (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert Eighth Amendment claims against Defendants Koval and Nauchtman premised upon deliberate indifference to Plaintiff's risk of suicide. The Court also construes Plaintiff's complaint to assert constitutional claims against Defendants Schroeder, James, and Bolton regarding the mishandling of Plaintiff's grievances and the lack of response to his kites. Plaintiff seeks $500,000.00 in damages from each Defendant. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

5

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted above, Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has

not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks only monetary damages. (ECF No. 1, PageID.6.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and any claim for monetary damages against Defendants in their official capacities fails to state a claim upon which relief can be granted.

### B.   Personal Capacity Claims

#### 1.   Defendants Koval and Nauchtman

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims against Defendants Koval and Nauchtman premised upon deliberate indifference to Plaintiff's risk of suicide

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Under the Eighth Amendment, the unnecessary and wanton infliction of pain constitutes "deliberate indifference" to an inmate's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97,

8

104–06 (1976). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

The Sixth Circuit has held that "[a]n inmate's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). With respect to suicidal tendencies, the Sixth Circuit has stated: "A plaintiff meets the objective prong of the [deliberate indifference] analysis by showing that the inmate *showed suicidal tendencies* during the period of detention or that he '*posed a strong likelihood of another suicide attempt*.'" *Troutman*, 979 F.3d at 483 (emphasis added) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006); *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 416 (6th Cir. 2006)). This is because "[s]uicide is a difficult event to predict and prevent and often occurs without warning." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

The Sixth Circuit has concluded that steps to prevent suicide are constitutionally required only in cases where "it [i]s 'obvious that there [i]s a 'strong likelihood that [the] inmate w[ill] attempt suicide[.]'" *Troutman*, 979 F.3d at 483 (quoting *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020)). "This is a high bar[.]" *Downard*, 968 F.3d at 601. Thus, the

subjective component "typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Id.* (citing *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014)). Moreover, "a prison official's duty to recognize an inmate's risk of committing suicide has a temporal component." *Andrews v. Wayne Cnty., Mich.*, 957 F.3d 714, 722 (6th Cir. 2020). To be held liable, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Linden*, 167 F. App'x at 421 (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

Here, Plaintiff avers that despite his placement on suicide watch after attempting to hang himself, Defendant Nauchtman placed Plaintiff in a quarantine cell "next to an inmate who had non-suicide prevention property in his cell." (Compl., ECF No. 1, PageID.3.) Plaintiff was able to obtain a sheet from the other inmate. On August 15, 2024, he told Defendant Koval that he was going to hang himself, and she responded, "Go ahead I'm not going to save you." (*Id.*) Defendant Koval then "shut the door closing off the housing section." (*Id.*) Plaintiff attempted to hang himself three times thereafter, losing consciousness each time. He alleges that prior to each attempt, he waved his arms at the camera to no avail, and that Defendant Koval never conducted the 15-minute checks during that time either.

Taking these facts in the light most favorable to Plaintiff, as the Court must do at this stage, the Court concludes that Plaintiff's Eighth Amendment personal capacity claims against Defendant Koval cannot be dismissed on initial review. Defendant Koval was aware of the significant risk that Plaintiff might attempt suicide because Plaintiff directly informed Defendant Koval that it was his immediate intention to commit suicide. And Defendant Koval disregarded that risk by

informing Plaintiff she would not save Plaintiff and then shutting the door to close off the housing section.

The facts Plaintiff alleges with regard to the involvement of Defendant Nauchtman, however, do not support an inference of deliberate indifference. After Plaintiff attempted to hang himself, Defendant Nauchtman placed Plaintiff in a quarantine cell without any materials that would permit Plaintiff to commit suicide. Defendant Nauchtman, or some other MDOC officer, set Plaintiff up for an observation round every 15 minutes and scheduled a detail with "psych." (Compl., ECF No. 1, PageID.3.) Plaintiff's allegations indicate that he was also subject to observation continuously by security camera. (*Id*.)

Plaintiff does not allege any facts that support an inference that Defendant Nauchtman knew the sheet in Plaintiff's neighbor's cell would be available to Plaintiff or that the neighbor had given the sheet to Plaintiff. Plaintiff alleges only that Defendant Nauchtman should have put Plaintiff in a cell where someone else could not give Plaintiff the means to commit suicide. Plaintiff's allegations do not support an inference that Defendant Nauchtman was aware of Plaintiff's immediate threat to commit suicide on August 15, 2024, that Defendant Koval had invited Plaintiff to make a suicide attempt, that Defendant Koval had closed the door to the housing unit, or that security camera observation would not provide a prompt response to any suicide attempt. Based on Plaintiff's allegations, Defendant Nauchtman knew of Plaintiff's general suicide risk and the precautions that had been put in place to prevent a suicide. Plaintiff alleges no facts that suggest Defendant Nauchtman deliberately disregarded Plaintiff's suicide risk.

Certainly, Plaintiff claims that Defendant Nauchtman should have known that Plaintiff might acquire items from the inmate in the neighboring cell. But the Sixth Circuit Court of Appeals has rejected "should have known" allegations as sufficient in the Eighth Amendment context

11

because it "comes close to 'suggest[ing] a classic negligence formulation.'" *Doe v. Jackson Loc. Sch. Dist. Bd. of Ed.*, 954 F.3d 925, 932 (6th Cir. 2020); *see also Farmer*, 511 U.S. at 835 (noting that negligent actions fall short of the deliberate indifference required to state an Eighth Amendment claim). Accordingly, the Court concludes that Plaintiff has failed to state an Eighth Amendment claim against Defendant Nauchtman.

### 2. Defendants Schroeder, James, and Bolton

As noted above, the Court has construed Plaintiff's complaint to assert constitutional claims against Defendants Schroeder, James, and Bolton regarding the mishandling of Plaintiff's grievances and the lack of response to his kites.

As an initial matter, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances, did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government

12

officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Likewise, any inaction or action by Defendants Schroeder, James, and Bolton did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Furthermore, § 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To the extent that Plaintiff seeks to hold Defendants Schroeder, James, and Bolton liable due to their supervisory positions at MBP, he fails to state such a claim. Government officials, such as Defendants Schroeder, James, and Bolton, may not be held liable for the unconstitutional conduct of their subordinates under a theory of

13

respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Schroeder, James, and Bolton encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Moreover, any conclusory allegations of supervisory responsibility are insufficient to show that Defendants Schroeder, James, and Bolton were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, for all of the reasons set forth above, Plaintiff's claims against Defendants Schroeder, James, and Bolton regarding their responses, or lack thereof, to Plaintiff's grievances and kites will be dismissed for failure to state a claim.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Nauchtman, Schroeder, James, and Bolton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendant Koval. Plaintiff's Eighth Amendment claim against Defendant Koval in her personal capacity remains in the case

An order consistent with this opinion will be entered.


Dated:   April 18, 2025                                /s/ Ray Kent
                                                       Ray Kent
                                                       United States Magistrate Judge